*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MOEN, Minors.

UNPUBLISHED
May 15, 2026
2:14 PM

No. 376124
Genesee Circuit Court
Family Division
LC Nos. 22-138237-NA,
22-138238-NA

Before: KOROBKIN, P.J., and RIORDAN and MARIANI, JJ.

PER CURIAM.

Respondent-father appeals as of right the termination of his parental rights to four minor children, IM, PM, CM, and AM, under MCL 712A.19b(3)(b)(*i*) (parent's act caused child or sibling sexual abuse and sexual abuse is reasonably likely to happen again), (j) (reasonable likelihood of harm), (k)(*ii*) (the parent abused the child or a sibling of the child, the abuse included criminal sexual conduct involving attempted penetration, and there is reasonable likelihood that the child will be harmed if returned to the care of the parent), and (k)(*ix*) (the parent abused the child or the sibling of the child, the abuse included sexual abuse, and there is reasonable likelihood that the child will be harmed if returned to care of the parent). We affirm.

## I. BACKGROUND

A Children's Protective Services (CPS) worker filed two petitions on behalf of petitioner, the Department of Health and Human Services (DHHS), in the trial court requesting the court to take jurisdiction over the children and terminate respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (g), (j), (i), (k)(*ii*) and (k)(*ix*). The petitions sought termination at the initial disposition under MCL 712A.19a(2) because there was an allegation of sexual abuse made by three of the children.

The petitions stated that respondent's three daughters were forensically interviewed. IM disclosed that respondent had repeatedly sexually abused her when she was nine years old. These incidents involved penetration. IM initially disclosed the abuse to a friend at school who subsequently reported IM's claims over IM's objection. Additionally, PM disclosed that

-1-

respondent put his hands down her pants and touched her genital area, and AM made similar disclosures. CM, respondent's only son involved in this case, was not interviewed. However, the petitions alleged that CM experienced physical abuse at the hands of respondent.

Respondent subsequently pleaded no contest to the petitions to allow the trial court to take jurisdiction over the children. Because of the nature of the allegations, respondent also was criminally charged related to his alleged abuse against IM and PM. Both IM and PM testified at a preliminary hearing in district court. At the adjudication hearing for this case, the guardian ad litem (GAL) requested that the trial court admit a transcript of the testimonies given by IM and PM from the preliminary hearing rather than have the children testify at the termination hearing. All parties stipulated to admission of the transcript in lieu of live testimony from the children. Weeks before the termination hearing began, respondent again indicated that it was his intention to use the children's transcript testimonies, instead of requiring them to testify at the termination hearing, because he asserted that the children had been "coached" to testify against him.

Respondent continued to object to having the children testify, and he argued that IM and PM already had testified extensively during the preliminary hearing. He also argued that AM, the youngest child, may be incompetent and could not testify. Petitioner argued that the children were ready to testify but acknowledged that, per the previous agreement to admit, the transcripts could serve as the children's testimony. Petitioner also stated that the video recordings of the forensic interviews regarding IM, PM, and AM had to be admitted in lieu of live testimony under MCL 712A.17b(5). The trial court admitted both the preliminary-hearing transcript and the interview recordings. The interviews were played before the court. The forensic interviewer testified that the appropriate forensic protocol was used during the interviews. She also identified herself as the interviewer for each video. The interviewer confirmed that the recordings contained a running time clock and a timestamp marking the date and time each interview occurred.

Otherwise, several witnesses testified at the hearing. The investigator who drafted the petitions testified that respondent had been involved in numerous prior CPS investigations, including one that was substantiated for physical abuse against the children. Two caseworkers testified as well. IM, PM, and CM's caseworker testified that the three children were living with their mother. She testified that there were no concerns with the placement. She reported that each of the three older children expressed no desire to return to respondent's home or to continue a relationship with him.

AM's caseworker testified that AM was thriving with her mother. The caseworker stated that AM did not ask about respondent. The GAL appointed for the children testified that the children were "happy" when she saw them at respondent's house. The children's mothers both testified that respondent was physically abusive toward them.

Several witnesses testified on behalf of respondent, including people familiar with him and IM. One witness, identified as IM's cousin, testified that she had heard IM state twice that she had been told to accuse respondent of sexual abuse by her mother. This witness further testified that she had recorded IM making these statements on her phone. Another witness, identified as IM's friend, testified that she was present for the conversations and recalled listening to the recording. However, both witnesses also testified that IM had stated she was "telling the truth" with respect to her claims of sexual abuse in the recording.

Both of these witnesses opined that IM was frequently dishonest and often embellished details of stories during conversation. Every other defense witness offered a similar opinion, including respondent's mother and sister. Respondent's mother testified that the other children would inform an adult whenever IM was dishonest. She also testified that IM was angry with respondent the night before her initial claims of sexual abuse were made against respondent. This same assertion was echoed by respondent's girlfriend during her testimony.

Respondent testified that his relationship with IM was strained, and he stated that IM started lying after she spent more time with her mother. Furthermore, he denied all claims of sexual or physical abuse against the children.

The trial court held a subsequent hearing to state its findings on the record. The trial court found that MCL 712A.19b(3)(b)(*i*), (j), (k)(*ii*), and (k)(*ix*) were established by clear and convincing evidence.[1] Specifically, the trial court focused on IM's testimony and found it credible. The trial court acknowledged that it had not been able to directly assess credibility as none of the children had testified in court. Regardless, the trial court found that IM was not involved in a "Machiavellian scheme concocted between her and her mother to permanently live with her mom and never have to see her father again."

The trial court reasoned that IM would not have disclosed the abuse "solely to a friend" if that was the case because she "had no idea what the friend was going to do," and IM had responded to making the disclosure "in the way that we believe many sexual assault victims respond." The trial court found that IM's statements remained consistent through her forensic interview and preliminary-hearing testimony with only "mild" deviations and, notably, that none of the other children had reported that IM's claims were false. Regarding PM and AM, the trial court found that the two children's testimony indicated that respondent had engaged in "grooming behaviors" that could have potentially led to further abuse as evidenced by his abuse of IM.

The trial court next found that termination was in the best interests of all four children because respondent sexually abused his three daughters. The trial court found that the children had no bond with respondent because he had not seen them for two years, and the three older children expressed no desire to see him and had requested his rights be terminated. Moreover, although she was too young to express an opinion, the trial court acknowledged that AM did not ask about respondent. Through the doctrine of anticipatory neglect, the trial court reasoned that all of the children, including CM, would be at risk of harm if returned to respondent's care. The trial court acknowledged that CM had not made allegations against respondent, but the court found that it could not preserve parental rights for one child while terminating rights as to other children who were victims of sexual abuse simply because CM was male.

Respondent now appeals.

II. ANALYSIS

---

[1] The trial court did not consider MCL 712A.19b(3)(g) or (i).

## A. STATUTORY GROUNDS

Respondent first argues that there was insufficient evidence to support the trial court's findings that MCL 712A.19b(3)(b)(*i*), (j), (k)(*ii*) and (k)(*ix*) were proven by clear and convincing evidence. We disagree.

"To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). This Court need not consider additional grounds for the trial court's decision if termination was supported by at least one statutory ground. *In re Jackisch/Stamm-Jackisch*, 340 Mich App 326, 333-334; 985 NW2d 912 (2022). We review a trial court's factual findings and ultimate determinations on the statutory grounds for termination for clear error. *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

MCL 712A.19b(3)(b)(*i*) provides for termination of parental rights under the following circumstances:

> (b) The child or a sibling of a child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

> (*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

The trial court did not clearly err by finding that this statutory ground was established by clear and convincing evidence. The trial court found IM's statements, that respondent raped her and molested her sisters, "very trustworthy" because IM's statements were consistent with only "mild deviations," IM never accused respondent of abuse before, none of IM's siblings came forward to dispute her claims of abuse, and IM presented as a sexual assault victim when her claims finally came to light.

The trial court directly addressed respondent's claim that IM and the other children had been coached by his ex-wives and stated succinctly that there was no evidence to support that claim. The trial court further considered the possibility of IM's claims being false, and the court concluded that IM was not the perpetrator of a "Machiavellian scheme" masterminded by herself and her mother to allow IM to "permanently live with her mom and never have to see her father again." The trial court determined that this was the case because IM disclosed her claims of abuse to a friend without knowing that the friend would share her claims with somebody else.

The trial court considered the recording of IM's statements to be neutral in probative value because IM was heard saying that she was "telling the truth," while also stating that she was "pulling all this off." The trial court also separately determined that PM and AM's statements indicated that respondent engaged in "grooming behaviors."

-4-

The trial court referenced the doctrine of anticipatory neglect in its best-interest analysis, but the doctrine is relevant to this issue as well. "The doctrine of anticipatory neglect provides that how a parent treats one child is probative of how the parent may treat other children." *In re Mota*, 334 Mich App 300, 323; 964 NW2d 881 (2020). The trial court determined that respondent was in the process of escalating his abuse against PM and AM from "grooming behaviors" to more harmful sexual abuse. On the basis of IM's statements, which the trial court found credible, that process tended toward penetrative sexual assault.

As acknowledged by the trial court when considering whether termination was in the children's best interests, CM presented as an outlier because he was a male and did not raise any allegations of sexual abuse. We have cautioned against taking the anticipatory-neglect doctrine too far by mechanically applying it to children who were not abused or neglected, or who are not similarly situated to their siblings who were abused or neglected. See *In re LaFrance*, 306 Mich App 713, 730-732; 858 NW2d 143 (2014); *In re Kellogg*, 331 Mich App 249, 259-261; 952 NW2d 544 (2020).

However, there were allegations of physical abuse of CM. Specifically, CM told the CPS investigator that respondent slapped him with the front and back of his hand. IM also told the same investigator that respondent targeted CM for slapping more than the other children. The investigator specifically testified that CM was at risk of harm related to physical abuse at the hands of respondent, and one CPS investigation from 2016 had been substantiated for physical abuse committed by respondent against him, IM, and PM. Moreover, respondent pleaded no contest to the allegations in the petition. This plea may be used as evidence against him to support termination. See MCR 3.971(B)(4). Relatedly, a witness testified that she had seen respondent strike CM multiple times.

For these reasons, the probative value of the anticipatory-neglect doctrine is as relevant to CM as the other children because he was at risk of harm if returned to respondent's care. See *In re LaFrance*, 306 Mich App at 730-732. Any distinction between physical abuse or sexual abuse is immaterial in this instance because MCL 712A.19b(3)(b)(*i*) can be established through clear and convincing evidence that any "injury or abuse" will occur to the child if the child is placed in the parent's home and, as explained, the predicate "sexual abuse" of a sibling already had occurred.

To summarize, given the testimony and evidence presented to the trial court, it did not clearly err by finding that MCL 712A.19b(3)(b)(*i*) was established through clear and convincing evidence with respect to all four children. *In re White*, 303 Mich App at 709. In other words, the record supports the trial court's ruling on this statutory ground.[2] This Court must defer to the factual findings and credibility assessments of the trial court, *In re BZ*, 264 Mich App at 296-297, and the court did not clearly err by finding that the children faced a reasonable likelihood of abuse, sexual or physical, if returned to respondent's care. See MCL 712A.19b(3)(b)(*i*). Because this

---

[2] Respondent's related suggestion that the trial court clearly erred by finding that an aggravated circumstance existed under MCL 712A.19a(2) is without merit. For the reasons discussed above, the trial court did not clearly err by finding that an aggravating circumstance existed under MCL 712A.19a(2) and MCL 722.638(a)(*ii*) on the basis of IM's credible testimony that she was raped by respondent. See *In re Simonetta*, 340 Mich App 700, 702, 708; 987 NW2d 919 (2022).

statutory ground was established, we need not analyze the other statutory grounds for error. *In re Jackisch/Stamm-Jackisch*, 340 Mich App at 333-334.

## B. BEST INTERESTS

Respondent next argues that the trial court erred by determining that termination of his parental rights was in the best interests of the children because the court failed to make individualized findings as to each child's best interests. We disagree.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). Whether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence. *In re Moss*, 301 Mich App at 90. The trial court must focus on the child, and not the parent, when making this determination. *In re Keillor*, 325 Mich App 80, 93; 923 NW2d 617 (2018).

The trial court must "weigh all the evidence available to determine the children's best interests," and should consider factors such as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re White*, 303 Mich App at 713 (quotation marks and citation omitted). The trial court also may consider the likelihood that the child's safety and well-being would be ensured if the child were returned to the parent's care. See *In re VanDalen*, 293 Mich App 120, 142; 809 NW2d 412 (2011). "[T]he trial court has a duty to decide the best interests of each child individually." *In re Olive/Metts*, 297 Mich App at 42. But that does not mean "the trial court errs if it fails to explicitly make individual and—in many cases—redundant factual findings concerning each child's best interests." *In re White*, 303 Mich App at 716. Rather, the duty requires that "if the best interests of the individual children *significantly* differ, the trial court should address those differences when making its determination of the children's best interests." *Id.* at 715.

Here, for the most part, the trial court's findings discussed the children collectively. Regarding respondent's daughters, the trial court found that IM, PM, and AM had all experienced some form of abuse ranging from penetrative sexual assault to "grooming behaviors." Through the doctrine of anticipatory neglect, the trial court found that none of the children, including CM, would be safe in respondent's care and custody. This was a strong reason in favor of the finding that termination was in the children's best interests. See *In re VanDalen*, 293 Mich App at 142.

Moreover, there was no reason to articulate individual findings as to whether termination was in the best interests of IM, PM, or AM in this regard. Each of these children suffered some degree of sexual abuse, and there is nothing to suggest that any distinctions in the degree of that abuse would render their best interests meaningfully different with respect to it. *In re White*, 303 Mich App at 715-716.

The only "significant difference" between CM and the other three children was the fact that there were not any claims of sexual abuse against respondent involving CM. See *id.* at 715. However, the trial court acknowledged that difference. The trial court heard testimony that CM experienced physical abuse in respondent's care and was at risk of future harm if returned to

respondent's home. We cannot find clear error with the trial court's decision to apply the doctrine of anticipatory neglect to CM when that decision rested on its belief that the children collectively were exposed to potential future harm if returned to respondent's care, regardless of the form of abuse. See *In re VanDalen*, 293 Mich App at 142. This is particularly true as the caseworkers for the children each testified that termination was in the children's best interests to reduce that risk of harm.

Otherwise, the children were similarly situated, as the three older children requested that respondent's parental rights be terminated, and the youngest child did not ask about respondent. The trial court found no bond between respondent and the children, and the court stated that the children needed "finality" because the termination proceedings had continued for years. The oldest three children were well-provided for in the care of their mother, and the youngest child was thriving with her mother. The court acknowledged that these constituted relative placements for the children, but found termination in the children's best interests nonetheless given all of the other considerations weighing in favor of it. As such, the trial court did not clearly err by failing to make express findings regarding each child's best interests individually because there were no substantial differences between them that the court's findings did not address. See *In re White*, 303 Mich App at 716. By extension, we conclude that the trial court did not clearly err by finding that termination was in the children's best interests by a preponderance of the evidence. See *In re Moss*, 301 Mich App at 90.

## C. VIDEO RECORDINGS

Lastly, respondent argues that the trial court erred by admitting, under MCL 712A.17b(5), the video recordings of the forensic interviews conducted with IM, PM, and AM because the forensic interviewer testified that the information bar including the timestamp, date, participants, and other information was not visible when the interview videos were played at trial. We disagree. In general, "[e]videntiary rulings are reviewed for an abuse of discretion," with "preliminary questions of law affecting the admission of evidence" reviewed de novo. *In re Martin*, 316 Mich App 73, 80; 896 NW2d 452 (2016). Respondent, however, did not raise this issue before the trial court, which makes it unpreserved for appellate review. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). We review unpreserved issues for plain error affecting substantial rights. *Id.*

MCL 712A.17b generally concerns the use of videorecorded statements in lieu of live testimony in certain proceedings involving sexual assault against minors and other vulnerable individuals. MCL 712A.17b(5) provides as follows:

> A custodian of the videorecorded statement may take a witness's videorecorded statement. The videorecorded statement shall be admitted at all proceedings except the adjudication stage instead of the live testimony of the witness. The videorecorded statement shall state the date and time that the statement was taken; shall identify the persons present in the room and state whether they were present for the entire video recording or only a portion of the video recording; and shall show a time clock that is running during the taking of the statement.

This statute "provides that such 'videorecorded statement[s] shall be admitted at all proceedings except the adjudication stage instead of the live testimony of the witness.' " *In re Martin*, 316 Mich App at 81, quoting MCL 712A.17b(5) (emphasis omitted). "MCL 712A.17b(5) not only permits but mandates admission of a videorecorded statement . . . in regard to any proceeding other than one at the adjudication stage, which would necessarily include a termination hearing, as long as the prerequisites set forth in MCL 712A.17b(5) and (6) are satisfied, e.g., the questioning must be in accordance with forensic interview protocol." *Id*. at 82.

Respondent's characterization of the forensic interviewer's testimony about the video recordings is incorrect. The interviewer testified that she was the one who spoke to IM, PM, and AM on the day the interviews were recorded. She testified further that she followed the appropriate forensic protocol. More importantly, she identified herself as the one asking questions in the videos, testified that the time clock was running in each of the videos, and stated that each video included a date and time stamp. The video recordings included as exhibits on appeal contain the required information.

Thus, there is no discernible plain error with respect to the videos that would require reversal. See *In re Utrera*, 281 Mich App at 8-9. Moreover, respondent moved for admission of the preliminary-hearing testimony for the specific purpose of not requiring the children to testify at the termination hearing. Evidently, respondent did not object to admission of the interview videos for the same reason. Respondent advocated for this result, and the trial court granted his request. He now argues on appeal that the trial court plainly erred by granting his own request. This issue cannot serve as a basis for reversal as "[a] party may not claim error regarding an issue on appeal where the party's lawyer deemed the action proper at trial or otherwise acquiesced." *In re Archer*, 277 Mich App 71, 79 n 3; 744 NW2d 1 (2007).

## III.  CONCLUSION

There were no errors warranting relief. Accordingly, we affirm.


/s/ Daniel S. Korobkin
/s/ Michael J. Riordan
/s/ Philip P. Mariani